*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　*Plaintiff-Appellant,*

　　　*v.*

KURT RUSSELL GROSSMAN,

　　　　　*Defendant-Appellee.*

No. 06-2310

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00080—Robert Holmes Bell, Chief District Judge.

Argued: September 11, 2007

Decided and Filed: January 18, 2008

Before: BOGGS, Chief Judge; MARTIN and SUTTON, Circuit Judges.

---

### COUNSEL

**ARGUED:** Hagen W. Frank, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant. Gary K. Voshell, LAW OFFICE OF GARY K. VOSHELL, Kalamazoo, Michigan, for Appellee. **ON BRIEF:** Hagen W. Frank, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant. Gary K. Voshell, LAW OFFICE OF GARY K. VOSHELL, Kalamazoo, Michigan, for Appellee.

　　　SUTTON, J., delivered the opinion of the court, in which MARTIN, J., joined. BOGGS, C. J. (p. 7), delivered a separate dissenting opinion.

---

### OPINION

---

　　　SUTTON, Circuit Judge. Kurt Grossman pleaded guilty to possessing images of minors engaged in sexual activity. Because Grossman's sentence of 66 months in prison and 10 years of supervised release, a substantial downward variance from the sentence recommended by the sentencing guidelines, is procedurally sound and reasonable in length, we affirm.

I.

　　　In September 2004, the National Center for Missing and Exploited Children began investigating Grossman—35 years old, married, with a two-year-old daughter—after receiving a report that he had engaged in "online enticement of children for sexual acts." JA 42. The tip,

reported by an individual who had communicated with Grossman in an online chat room, said that Grossman "loved to chat about his interests . . . includ[ing] child abuse, kinky kids, and older men for younger women." *Id.* By May 2005, the investigation revealed that Grossman was an active member of an online group that shared child pornography. A case agent later discovered that Grossman had sent multiple emails containing child pornography from November 2004 to January 2005.

When case agents visited Grossman's home, he agreed to talk to them. He denied having inappropriate physical contact with minors but admitted possessing and trading illicit pornography "for more than five years." JA 43. Grossman consented to a search of his computer, which revealed thousands of images, including child and adult pornography.

On April 14, 2006, case agents arrested Grossman, after which he pleaded guilty to possessing images of minors engaged in sexual activity. *See* 18 U.S.C. § 2252(a)(4)(B). The base offense level for a violation of this law is 18. *See* U.S.S.G. § 2G2.2(a)(1). The presentence report recommended several increases to Grossman's offense level: two levels for images involving prepubescent minors, *see id.* § 2G2.2(b)(2); five levels for distributing images in return for things of value (more images), *see id.* § 2G2.2(b)(3)(B); four levels for sadistic images, *see id.* § 2G2.2(b)(4); two levels for using a computer, *see id.* § 2G2.2(b)(6); and five levels for an offense involving over 600 images, *see id.* § 2G2.2(b)(7)(D). Grossman also qualified for a three-level downward adjustment both for accepting responsibility, *see id.* § 3E1.1(a), and for entering a guilty plea, *see id.* § 3E1.1(b). These adjustments left Grossman with an offense level of 33 and a criminal history category of I, which intersect at a guidelines range of 135–168 months. Because Grossman's plea agreement included just one count of conviction, that range was reduced, in accordance with U.S.S.G. § 5G1.1(c)(1), to the statutory maximum of 120 months. *See* 18 U.S.C. § 2252A(b)(2).

After acknowledging that the probation department "correctly" calculated the guidelines range, the sentencing judge noted that he was "troubled" and "shocked" by the enhancements. JA 26–27. In his view, the guidelines produced a calculation that was "not fair" and "not reflective of what [Grossman] did." JA 27. Concerned that the guidelines "[break] out an offense into very tiny increments that almost repeat one another," *id.*, and that some of the enhancements should be "knock[ed] off," JA 28, he complained and "want[ed] the record to reflect," JA 27, that "[t]his is what happens when you take judging, which is a judge's job, and you give it to a commission and say, [a]dd mathematical calculations and come up with a presumed sentence from that," *id.*

Returning to the task at hand, the judge recognized his duty to impose a sentence "sufficient but not greater than necessary" to comply with the § 3553(a) factors. 18 U.S.C. § 3553(a). The judge appreciated that the offense was "thoroughly disgusting and antisocial" and that certain aspects of Grossman's psychological evaluation were "indeed troubling." JA 29; *see* 18 U.S.C. § 3553(a)(1). The judge understood that the sentence must "reflect the seriousness . . . of this offense and [afford] adequate deterrence to criminal conduct and . . . protect the public from further crimes that might be committed by this defendant." JA 29; *see* 18 U.S.C. § 3553(a)(2)(A)–(C). He noted that Grossman was an "educated man" who knew his actions against innocent children were "legally and morally wrong" and commended Grossman for appreciating that the true victims of his crime were the innocent children. JA 29; *see* 18 U.S.C. § 3553(a)(1), (7). The judge also considered Grossman's need for "correctional treatment and educational and potentially medical treatment." JA 29; *see* 18 U.S.C. § 3553(a)(2)(D). He then sentenced Grossman to a 66-month prison term followed by 10 years of supervised release.

## II.

In reviewing sentences after *Booker*, we "first ensure that the district court committed no significant procedural error." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). We then consider "the substantive reasonableness of the sentence imposed." *Id*. The question in the end is whether the district court abused its discretion in sentencing the defendant. *Id*.

## A.

District courts, as a matter of process, must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range. *Id*. In applying Congress's mandate that sentencing courts must "consider" the § 3553(a) factors, we have not lost sight of the fact that the district court judges are involved in an exercise of judgment, not a ritual. *United States v. McGee*, 494 F.3d 551, 557 (6th Cir. 2007). We thus have required courts only to provide enough detail to allow an appellate court to conduct "meaningful appellate review" and to conclude that the district court adequately considered the relevant statutory factors. *Id*. at 556.

Consistent with these requirements, the sentencing judge correctly calculated the guidelines range. He recognized that his "duty is to impose a sentence sufficient but not greater than necessary to comply with the purposes that Congress has set forth for sentencing in 3553(a)." JA 29; *see United States v. Kimbrough*, 128 S. Ct. 558, 570 (2007). After applying the § 3553(a) factors, he "ma[d]e an individualized assessment based on the facts presented" as to what sentence Grossman should receive. *Gall*, 128 S. Ct. at 597. Weighing these individualized considerations, the district judge concluded that the guidelines produced "a sentence that's not reflective of what [Grossman] did," JA 27, and thus exercised his discretion to reduce Grossman's sentence from 120 months to 66 months.

The government concedes that "the district court clearly did consider the § 3553 factors." Br. at 14. And the judge plainly explained the basis for his sentence, including his substantial variance below the guidelines range. *See* JA 27–30. On this record, no procedural error occurred.

## B.

The more difficult question is whether the length of this sentence is reasonable. Grossman's recommended guidelines sentence (after accounting for the statutory maximum) was 120 months and 10 years of supervised release, and the district court varied it to 66 months and 10 years of supervised release. This considerable variance implicates the Supreme Court's recent decision in *Gall v. United States*. While *Gall* permits appellate courts, "[i]n reviewing the reasonableness of a sentence outside the Guidelines range," to continue to "take the degree of variance into account and consider the extent of a deviation from the Guidelines," it offers two important qualifications. 128 S. Ct. at 594–95. It "reject[s] . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id*. And it "reject[s] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.*

At the same time that *Gall* bars a "rigid mathematical formula" for reviewing outside-guidelines sentences, it permits district and appellate courts to require some correlation between the extent of a variance and the justification for it. *Id*. In describing the duty of a sentencing judge, the Court says: "If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id*. at 597. In describing the duty of an appellate court, the Court says: "It may consider the extent of the deviation, but must give due deference to

the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

Perhaps most importantly, *Gall* shows that the sentencing process involves an exercise in judgment, not a mathematical proof. As a result, appellate courts must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," *id.*, and due deference to the sentencing judge's on-the-scene assessment of the competing considerations, *id.* at 597–98—which is to say, not just abuse-of-discretion review to the reasonableness of a sentence but abuse-of-discretion review to the district court's determination that there is a legitimate correlation between the size of the variance and the reasons given for it, *see id.* at 591 ("We now hold that, while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard."); *id.* at 602 ("[I]t is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable.").

Measured by *Gall*'s requirements and above all by *Gall*'s deference to district court judges at sentencing, the district court did not commit reversible error in reducing Grossman's sentence from 120 months to 66 months. Although the court found Grossman's crime "thoroughly disgusting and antisocial in every way, shape and fashion," JA 29, it believed that the recommended guidelines sentence was "not reflective of what [Grossman] did," JA 27. Initial evidence that the guidelines overstated Grossman's offense comes from the fact that Congress itself thought so. Keep in mind that the guidelines recommended a range of 135–168 months, while Congress placed a maximum sentence on this crime of 120 months.

In explaining why five and a half years in prison, together with 10 years of supervised release, would be "sufficient, but not greater than necessary," to respect the § 3553(a) factors, the court gave several reasons. It observed that Grossman is an "educated man" and suggested that he is a promising candidate for rehabilitation. JA 29. It noted that Grossman appreciated the magnitude of his crime and that Grossman "correctly [understood that] the victims in this matter were really the children who made no choices in this matter, but who were put into" a terrible situation. *Id.* It weighed the need to reflect the "seriousness . . . of this offense and put adequate deterrence to criminal conduct and to protect the public from further crimes that might be committed by [Grossman]" and found those factors to support a substantial reduction in the sentence. *Id.*

In response to the government's principal arguments for a guidelines sentence—specific and general deterrence—the court recognized "troubling" aspects of Grossman's psychological evaluations but found that "providing [Grossman] with needed correctional treatment and educational and potentially medical treatment is in fact a component that this Court believes is essential for purposes of providing what this Court believes to be an adequate sentence under the facts and circumstances." *Id.* To this end, the court recommended that, while Grossman served his prison term, he should "receive psychological counseling and [should] reside in a facility as near as possible to his family . . . in west Michigan so that they might visit with him and he might retain those marital and family ties as closely as possible." JA 30. Consistent with the court's concerns about Grossman's "troubling" psychological profile and the need for serious counseling, it sentenced Grossman to serve a ten-year term of supervised release, which includes a requirement that Grossman have continued psychological counseling. JA 29.

Accordingly, while the court accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct, it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release, which itself contains substantial limitations on an individual's freedom. *See Gall*, 128 S. Ct. at 595–96. Nor was this sentencing hearing inconsistent with *Gall*'s mandate that,

when a district court judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. at 597. The district court never lost sight of the sentence recommended by the guidelines and gave ample reasons for reducing the sentence as far as he did.

The government questions the reasons offered by the sentencing judge for lowering the sentence—namely, that he seemed to think that some of the enhancements bordered on double counting and that he categorically disagreed with some of the enhancements. To the extent the court viewed the guidelines as duplicative, that by itself would not justify a downward variance. But the defendant did not argue that the enhancements amount to impermissible double counting, and the record contains no evidence that they do. That is presumably why the court said that the enhancements "*almost* repeat one another" in this case, JA 27 (emphasis added), which speaks not to a problem of double counting but to a perception that the guidelines sentence is higher than this conduct deserves—a concern that *Booker* aptly allows a court to consider in applying *advisory* guidelines.

Also unavailing is the government's concern that the judge premised his sentence on an across-the-board objection to certain guidelines enhancements. The extent to which a district court may offer a wholesale disagreement with a guideline as the basis for a variance remains unclear after *Kimbrough*. *See* 128 S. Ct. at 574–75. We need not decide the question, however, because, while the judge at times suggested that he objected to certain guidelines and to the guidelines system in general, he ultimately rested his decision on a number of individualized considerations. *See, e.g.*, JA 29 (accounting for the nature and circumstances of the crime); *id*. (accounting for Grossman's personal history and characteristics); *id*. (accounting for deterrence and societal protective needs). In view of the abuse-of-discretion standard that *Gall* emphasizes we must apply in reviewing a sentence, those individualized and rationally based considerations suffice to uphold this sentence.

C.

Our dissenting colleague agrees "that the district court *could* have given this same sentence by means of a properly articulated variance from the correct Guidelines range" but says that he did not do so. Dissent at 7. As our colleague sees it, the district court imposed a *within-guidelines* sentence, not a downward variance, and did so based on an improper calculation of the guidelines range—improper because the parties agree that the guidelines range was 135–168 months and that the statutory maximum was 120 months, and yet the district court seemed to impose a 66-month sentence by "knock[ing] off a bunch" of upward enhancements and arriving at a 63–78 month guidelines range. *Id.* (quoting JA 28). This approach, the dissent fears, will "reduce the role of the Guidelines to a nullity[] by making the [Guidelines] calculation irrelevant." *Id.*

We have some sympathy for our colleague's point. The sentencing transcript is not a model of clarity, and the trial judge's frustrations with the escalating features of the guidelines calculation may have gotten the best of him. But the record ultimately confirms that the judge based this sentence on a downward variance, not on an improper calculation of the guidelines. He started with the guidelines range and noted that the calculation was "correctly done." JA 27. He then applied that properly calculated range to the individual circumstances of Grossman's crime, which, he found, produced "a sentence that's not reflective of what [Grossman] did." *Id*. Only then did he begin to explain his reasons for reducing Grossman's sentence—which among other things included "knock[ing] off" enhancements that improperly exaggerated Grossman's sentence. JA 28. Eliminating any doubt about what the trial judge thought he was doing, the judge, in the formal statement of reasons that all trial judges must complete in sentencing each individual, checked the box indicating that "[t]he court imposed a sentence outside the advisory sentencing guideline system." JA 36. Because the Supreme Court's post-*Booker* cases require appellate courts to give district courts the benefit of the doubt when it comes to the substantive length of the sentence they

impose, *see Gall*, 128 S. Ct. at 597, as well as to the procedures they use in imposing those sentences, *see Rita v. United States*, 127 S. Ct. 2456, 2465 (2007), it seems appropriate to take the trial judge at his word.

Nor does this sentence risk reducing the guidelines to a "nullity." By basing a downward variance in part on a court's disagreement with the application of certain enhancements to *this* individual, a court does not forsake the guidelines. Indeed, a judge would show his respect for the guidelines—perhaps too much respect for them—by linking reductions in sentences solely to what the judge perceives to be unduly high guidelines enhancements in this case, as opposed to linking those adjustments to the application of *all* of the § 3553(a) factors.

III.

For these reasons, we affirm.

---

**DISSENT**

---

BOGGS, Chief Judge, dissenting. I agree completely with Judge Sutton's analysis of the *Gall* and *Kimbrough* cases, and their general application to cases such as this one. However, I read the record differently than the court does, and therefore reluctantly dissent.

The court agrees that the sentencing judge "must properly calculate the guidelines range" (Op. at 3) and then states that "the sentencing judge correctly calculated the guidelines range" (*ibid.*), but to me, the record shows to the contrary. At JA 27, the court begins by saying that "the nature of the way the calculations are done [is] designed to exacerbate the high numbers that we come up with here . . . ." The court then goes on to say, at JA 28, "I'm going to knock off a bunch of these . . . I'm going to strike the calculation in 37. . . . I'm going to strike the ones in 41 as well." (referring to the two-level enhancement for material involving children under twelve and the five-level enhancement for possessing more than six hundred images.) The judge then follows the logical import of "striking these enhancements" by correctly computing that, as he then says, "the total offense level is more correctly 26, and obviously we have a criminal history level of I in this matter." JA 28.

The Guidelines table shows that the range for an offense level of 26 and a criminal history of I is 63-78 months, and the court then proceeds to give a sentence of 66 months, exactly within this (incorrect) range. Thus, while I agree fully with the court that the district court *could* have given this same sentence by means of a properly articulated variance from the correct Guidelines range, I cannot read the record to say that is what the judge did in this case.

The court does not really defend, because it cannot, the district court's statements, if, as I argue, they are clearly statements of a Guidelines calculation. Possessing material involving minors under the age of twelve is transparently not the same, or even close to the same, as trading child pornography, and the use of a computer is not the same as possessing more than six hundred images. If I could read the district court's statements as just a hyperbolic shorthand for believing that Mr. Grossman's Guidelines range was simply too high, I would do so. However, the transcript and the judge's calculations, leading ultimately to his explicit statement that "I find that the total offense level is more correctly 26" (JA 28), simply do not allow me to hold that the clear mandate of *Gall* has been followed.

While it could be argued that my point here is simply a distinction without a difference in this case, I think it is important to emphasize that a correct Guidelines calculation continues to be essential. First, the Supreme Court has explicitly stated that this is so. In *Gall*, the court stated: "A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 128 S. Ct. at 596. It also emphasized that "the appellate court . . . must first insure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . ." *Id.* at 597. We do not enforce these important statements if we allow a clearly improper calculation to be rescued by a proper statement of reasons that *could* justify a variance. When we allow that, we reduce the role of the Guidelines to a nullity, by making the calculation irrelevant because, whether right or wrong, those calculations are subsumed in the judge's ultimate reasoning.

I therefore respectfully dissent.