RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 05-3784

WILLIAM J. DAVIS,

*Defendant-Appellee.*

On Remand from the United States Supreme Court.
No. 99-00110—Walter H. Rice, District Judge.

Argued: June 2, 2006

Decided and Filed: August 12, 2008

Before: BOGGS, Chief Judge; KEITH and SUTTON, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellant. C. Mark Pickrell, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellee. **ON BRIEF:** Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellant. C. Mark Pickrell, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellee.

————————————

## OPINION

————————————

SUTTON, Circuit Judge. A jury convicted William Davis of two counts of bank fraud, after which the district court calculated a sentencing-guidelines range of 30 to 37 months. The court imposed a sentence of one day in prison because, among other reasons, Davis was 70 years old at the time of sentencing and because he had committed the underlying crimes 14 years earlier. We reverse because the second explanation for the court's sentence represents an inappropriate sentencing factor on this record.

I.

In 1990, Davis applied for and received a $1.6 million line of credit from a local bank for Fries Correctional Equipment of Kentucky, a business in which he was a part owner and president. Davis agreed to be a personal guarantor of the line of credit. When the bank renewed the line of credit in 1991, Davis submitted a financial statement that omitted a $100,000 debt he had incurred during the previous year.

Fries Correctional defaulted on the loan in 1992, and the bank, invoking the personal guarantee, filed a civil action against Davis. In April 1992, during a deposition in the civil action, Davis claimed that he no longer owned several securities listed in the 1991 financial statement. Other financial documents, however, showed this claim to be false, revealing that he had continued to own the securities until October 1992, when he sold them.

In 1992, Davis and his wife declared bankruptcy. And in August 1993, the federal government notified Davis that it intended to initiate criminal proceedings against him as a result of the defaulted loan. When the Davis bankruptcy ended in 1996, the bank had yet to recover roughly $600,000 in loan proceeds.

On December 15, 1999, the government indicted Davis. And on May 23, 2002, a jury convicted him of two counts of bank fraud—one relating to the omission of the $100,000 loan from his 1991 financial statement, the other relating to the false claims he made during his April 1992 deposition.

In August 2003, the district court sentenced Davis. Applying the then-mandatory guidelines, it used a base-offense level of 6 and added 14 levels due to the amount of the loss. The court rejected Davis's requests for a downward departure based on:

> (1) acceptance of responsibility, *see* JA 381 (noting that Davis had "contested the facts and the implications to be drawn from them");
>
> (2) post-conduct rehabilitation, *see* JA 385 ("There, quite frankly, is no evidence that this defendant now is an improved human being over what he was before this offense . . . ."); JA 387 (citing Davis's testimony at sentencing as an additional justification for denying the departure and noting that the testimony "was not as candid as perhaps it could be");
>
> (3) the government's delay in bringing the indictment, *see* JA 391 ("It would be difficult to say that a prosecution brought within the applicable statute of limitations is something outside the heartland of cases and beyond the thinking of the framers of the guidelines."); and
>
> (4) the claim that the guidelines range did not accurately reflect the seriousness of the offense, *see* JA 384 (noting that the sentencing range did not overstate the seriousness of the offense).

All of this left Davis with a guidelines range of 33 to 41 months. "Normally," the court noted, it "would be inclined to sentence in the middle or upper reaches of the guideline range," JA 393, but it decided to impose a 33-month sentence on each of the two counts (to run concurrently) and 5 years of supervised release. In choosing the low end of the guidelines range, the court relied on Davis's age at the time (69) and the delay between the bank fraud and sentencing (11 years). The court did not impose restitution because Davis could not afford it.

On appeal, this court affirmed Davis's conviction but remanded the case for resentencing. *See United States v. Davis*, 397 F.3d 340, 342 (6th Cir. 2005). As to the sentencing aspect of its decision, the court reasoned that the district court had calculated the sentence under the 2002 Guidelines Manual instead of the more lenient version in effect when Davis committed the offense (the 1991 version), and that the court's imposition of a sentence under mandatory guidelines violated *United States v. Booker*, 543 U.S. 220 (2005). *See Davis*, 397 F.3d at 350–52.

On April 29, 2005, the district court resentenced Davis. Using the 1991 version of the guidelines, the district court set Davis's base offense level at 6, then applied an 11-level

enhancement due to the amount of the loss, *see* U.S.S.G. § 2F1.1 (1991), then added a 2-level enhancement for more-than-minimal planning in committing the offense, *see id.* § 2F1.1(b)(2). After concluding that Davis did not deserve a downward departure, the court determined that his criminal history category (I) and his offense level (19) intersected at an advisory guidelines range of 30 to 37 months.  *See* JA 408.

The court then considered the other factors listed in 18 U.S.C. § 3553(a) in deciding whether to deviate from the guidelines range.  It first considered Davis's characteristics and history, *see* § 3553(a)(1), noting his age ("70 years and seven months"), that he was retired, that he had "moved back to Ohio to be near his family and his grandchildren" and that he had one prior offense (which was committed when he was a young man), JA 409.  The court turned to the offenses of conviction, *see* § 3553(a)(1), which the court recognized were "serious when committed" and that "they remain serious," JA 409.  The court pointed out, however, that the offenses had been committed "14 years ago."  *Id.*  It also noted that the defendant's "age and the length of time between the commission of the offenses and the date of sentencing" warranted consideration after *Booker* even though they were not "proper" to consider as grounds for a downward departure under the guidelines.  *Id.*

In addressing "the public's interest in safety," *see* § 3553(a)(2)(C), the court concluded that "the public is in no danger from this defendant" because Davis is "retired," "[h]e does not control a business and in all probability has no desire to do so," JA 409–10.  As for punishment, *see* § 3553(a)(2)(A), the court noted that for "punishment to be effective [it] must be reasonably close to the offense committed or it becomes, while not cruel and unusual, it becomes, I think, doubly erroneous," JA 410.  The court was also "satisfied that the factors that [it] set forth . . . are such that the sentence . . . will not promote disrespect for the law."  *Id.*; *see* § 3553(a)(2)(A).  As for deterrence, *see* § 3553(a)(2)(B), the court concluded that any sentence—whether it was "a day . . . [or] 10 years or anything in between"—"would be sufficient to deter this defendant from committing further crimes," JA 411.

Because the court believed that "the factors in this case are unique enough," it concluded "that others who might be inclined to commit bank fraud are not likely to engage in that course of conduct in the hope that they will be treated as leniently" as the defendant.  *Id.*  The district court reasoned that the public's interest in rehabilitation, *see* § 3553(a)(2)(D), had been well-served because Davis had been, "in effect, rehabilitated by the passage of time," JA 411.  The potential for "disparity in sentence between persons similarly situated who commit certain crimes," *see* § 3553(a)(6), was likewise not a concern because "[i]n th[e] Court's opinion, and recollection, it has dealt with very few 70-year-old people who were brought before the Court for sentencing 14 years after the fact," JA 411–12.  Restitution also was not an issue because, as the court had found at Davis's original hearing (a finding the government did not appeal), Davis had no ability to pay restitution.

Taking all of these considerations into account, the court sentenced Davis to one day in prison for each of the two bank-fraud counts (running concurrently and with credit for the one day served when the U.S. Marshals took him into custody), three years of supervised release (including one year of home confinement) and 100 hours of community service.

On appeal, this court reversed.  *See United States v. Davis*, 458 F.3d 491 (6th Cir. 2006). We held that Davis's age at the time of sentencing (70) and the gap in time between the crimes and his sentencing hearing (14 years) did not justify such a substantial variance—from 30–37 months to one day.  *See id.* at 500.  The Supreme Court granted Davis's certiorari petition, vacated our decision and remanded the case for reconsideration in light of *Gall v. United States*, __ U.S. __, 128 S. Ct. 586 (2007).  *See Davis v. United States*, __ U.S. __, 128 S. Ct. 856 (2008).

II.

In *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008), we explained *Gall*'s impact on appellate review of district court variances:

> While *Gall* permits appellate courts, "[i]n reviewing the reasonableness of a sentence outside the Guidelines range," to continue to "take the degree of variance into account and consider the extent of a deviation from the Guidelines," it offers two important qualifications. 128 S. Ct. at 594–95. It "reject[s] . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id*. And it "reject[s] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.*
>
> At the same time that *Gall* bars a "rigid mathematical formula" for reviewing outside-guidelines sentences, it permits district and appellate courts to require some correlation between the extent of a variance and the justification for it. *Id.* In describing the duty of a sentencing judge, the Court says: "If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.* at 597. In describing the duty of an appellate court, the Court says: "It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*
>
> Perhaps most importantly, *Gall* shows that the sentencing process involves an exercise in judgment, not a mathematical proof. As a result, appellate courts must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," *id*., and due deference to the sentencing judge's on-the-scene assessment of the competing considerations, *id.* at 597–98—which is to say, not just abuse-of-discretion review to the reasonableness of a sentence but abuse-of-discretion review to the district court's determination that there is a legitimate correlation between the size of the variance and the reasons given for it, *see id.* at 591.

*Id.* at 596.

Gauged by these requirements, Davis's case is not an easy one. If we focus on the individualized-sentencing side of the equation—deference to the district court judge and his "on-the-scene assessment" of the § 3553(a) factors—the case looks like an affirmance. If we focus on "the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance," *Gall*, 128 S. Ct. at 597, the case gets harder. Even after *Gall*, appellate courts still have some role to play, even if it is a modest one, in ensuring that there is some consistency between and among district-court sentencing practices, *see Booker*, 543 U.S. at 263 (noting that appellate review permits "sentencing differences" to be "iron[ed] out"), and in ensuring that variances turn on legitimate sentencing considerations, *see United States v. Bailey*, 488 F.3d 363, 368 (6th Cir. 2007) ("A sentence may be substantively unreasonable where the district court bases the sentence on impermissible factors . . . .") (internal quotation marks and alterations omitted); *United States v. Hunt*, 521 F.3d 636, 649–50 (6th Cir. 2008).

The district court discussed several relevant factors in imposing Davis's sentence, including the reality that Davis's crime was non-violent, that he had committed no further criminal activity since his offense and that he was bankrupt and unemployed and therefore unlikely to commit another white-collar crime. Two other factors that featured prominently in the district court's sentencing,

however, merit further consideration: the 14-year gap between Davis's crimes and his second sentencing hearing and Davis's age (70) at the time of sentencing. The first of these two reasons represents an inappropriate sentencing factor on this record, and the second reason in conjunction with the other circumstances of Davis's case may well support a variance, though we leave it to the district court to decide in the first instance how great any variance should be.

Section 3553(a) does not list the amount of time that passed between the date of a defendant's crime(s) and his sentencing as a basis for lowering or raising a sentence. And it is not a criterion that naturally lends itself to deciding how long a sentence should be. If a lengthy delay between crime and punishment warrants a shorter prison term, as happened here, then it would seem to follow that a brief delay warrants a longer prison term. Yet no one suggests—indeed, we doubt anyone ever has suggested—that a district court may impose a longer sentence on this basis. The underlying prosecution in this case, moreover, occurred within the statute-of-limitations period. And Davis has not raised any speedy-trial objections to the prosecution. Nor, at any rate, is it invariably clear whether a legal delay in prosecuting or sentencing helps or hurts an individual. What criminal suspect wants the government (and grand jury) to pull the indictment trigger too quickly? And how often do elderly criminal defendants such as Davis seek expedited sentencing?

But to the extent such a delay might legitimately bear on a trial court's exercise of sentencing discretion, a point we need not decide, reliance on this factor at a minimum should require some evidence that the government bears unjustified responsibility for the delay and that the defendant suffered from the delay. As the district court itself noted in issuing this sentence, however, any delays in indicting and prosecuting Davis flowed from "very practical reasons," not "any malicious motive" on the part of the government. JA 410.

Consistent with the district court's understanding, most if not all of the 14-year delay—between 1991 when Davis omitted a $100,000 debt on a financial statement to the bank and the April 2005 sentencing—was caused by legitimate considerations. One of the intervening years hardly counts because the second fraudulent act did not occur until 1992, when Davis did not disclose his continued ownership of certain securities. Another four years should not factor into the equation because the government could not know the extent of the loss from the fraud (and Davis's ability to repay the debt) until the end of Davis's bankruptcy in 1996. While the government took another three years to indict him (though it still acted within the statute of limitations), the record offers no suggestion that the three years were used for anything other than ensuring that the financial records showed that a fraud had occurred and that the government wished to exercise its prosecutorial discretion in bringing the charges. Another three years or so involved the gap between the indictment and the jury conviction in 2002, but Davis presumably consented to this delay, as he does not bring a speedy-trial challenge. Another year was occupied with preparing for the sentencing hearing, a proceeding that Davis apparently (and understandably) made no effort to expedite. And the two years between his first sentencing hearing (2003) and his second (2005) stemmed from Davis's success in making a *Booker* argument (among other arguments) on appeal.

Delays between the time a crime is committed and the time a guilty defendant serves his sentence of course should not be casually ignored. But the question here is not whether the delay violated Davis's statutory or constitutional rights or even whether the delay undermined the federal government's efforts to vindicate the purposes of this criminal statute. The question is whether the delay supplies an independent reason for a deviation from the advisory guidelines range. The district court concluded that the delay did not authorize a *downward departure* either before *Booker* or after, and we agree. Neither, however, do we see how the delay favors a *variance* when there has been no finding of government misconduct and no finding that the delay prejudiced the defendant. To be sure, an interval of years between a crime and the commencement of a sentence may affect the application of certain § 3553(a) factors. Time, for example, may allow a defendant to make whole all of the victims of his crime, or it may allow him to show demonstrable signs of rehabilitation. But, on this record, it remains to be seen how the passage of time by itself justified this variance.

What the delay principally did when it comes to the § 3553(a) factors was to allow the defendant to age—and age, the second reason for the district court's variance, may indeed be a legitimate basis for a variance. The defendant was 56 when he committed the first crime, and he was 70 at the time of the second sentencing hearing. When he committed the crime, he was of an age that would not likely bear on a guidelines range of 30 to 37 months. And when he was eventually sentenced, he was of a certain age (and retired from the profession from which he participated in the bank fraud), both of which might affect a trial judge's decision to grant a variance.

True, the guidelines said in 1991 (and likewise say today) that "[a]ge . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.1 (1991); *see also* U.S.S.G. § 5H1.1 (2004). That is why the district court correctly concluded at Davis's first and second sentencing hearings that he could not grant a downward departure based on Davis's age. But a trial judge's authority to exercise independent judgment in granting a variance after applying the § 3553(a) factors differs from his authority to grant departures. For example, while § 3553(a)(5) directs a sentencing court to consider "any pertinent policy statement[s]" issued by the Sentencing Commission (which would include the age-as-a-discouraged-factor provision), § 3553(a)(1) directs a sentencing court to consider the "history and characteristics of the defendant." In an appropriate case, a trial court, in exercising the "broad discretion" that *Booker* gives it "in imposing a sentence within a statutory range," 543 U.S. at 233, has a freer hand to account for the defendant's age in its sentencing calculus under § 3553(a) than it had before *Booker*. *See United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006) (holding that district court's consideration at sentencing of defendant's age was not inappropriate and noting that even though "a factor is discouraged or forbidden under the guidelines," that "does not automatically make [the factor] irrelevant when a court is weighing the statutory factors apart from the guidelines").

To say that a district court may account for a defendant's age at sentencing, however, is not to say that Davis's age (70) by itself warrants a one-day sentence. The record shows that the fraud caused over $900,000 in loss; Davis did not repay the lost money; he did not accept responsibility for the crimes; and he has yet to show remorse for the crimes. And all of this occurred in the context of a white-collar crime: One of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crimes. *See United States v. Brewer*, 899 F.2d 503, 508 (6th Cir. 1990) (citing Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises upon Which They Rest*, 17 Hofstra L. Rev. 1, 20–22 (1988), and U.S.S.G. ch. 1, pt. A, introductory cmt.) (noting that the guidelines were an attempt by the Sentencing Commission to address discrepancies and inequities between sentences for white-collar crimes and other crimes), *overruled in part on other grounds by Koon v. United States*, 518 U.S. 81 (1996); *see also United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("The fact that Martin's guidelines range was 108–135 months' imprisonment evinces Congress's attempt to curb judicial leniency in the area of white collar crime.").

While the district court stated that the sentence still would promote respect for the law, it never explained how that could be so given these sentencing facts—facts that the district court did not discuss, much less contradict, in explaining this component of its ruling. While the district court recognized that the offenses of conviction were "serious," JA 409; *see* 18 U.S.C. § 3553(a)(2)(A), it did not explain how the one-day sentence it gave Davis meshed with Congress's own view of the crimes' seriousness—as expressed through a statutory prohibition on probationary sentences in this setting, *see id.* §§ 3559, 3561. While the district court indicated that this sentence would serve the goals of societal deterrence, *see id.* § 3553(a)(2)(B), it is hard to see how a one-day sentence for a lucrative business crime satisfies that goal, *see Martin*, 455 F.3d at 1240 ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotation marks and alteration omitted). And while age may well be an appropriate factor in choosing to grant a

downward variance, the notion that the status of being 70 years old makes serving any prison time pointless is not self-evident. *Cf. United States v. Tocco*, 200 F.3d 401, 434 (6th Cir. 2000).

Under these circumstances, Davis needs to be resentenced. One of the district court's explanations for this sentence—the time interval between Davis's crimes and sentencing hearing—does not support a variance. And the other predominant explanation the district court gave for the sentence—Davis's age—may well support a variance, though it remains unclear whether the district court thought age, along with the other circumstances of Davis's case, would warrant a one-day sentence and whether such a sentence would be supportable in light of Congress's determination that probation is not an appropriate sentence for this crime. We leave it to the district court to decide these matters in the first instance.

All of this, however, should not obscure a broader point. While appellate courts retain responsibility for identifying proper and improper sentencing considerations after *Booker*, it is not our task to impose sentences in the first instance or to second guess the individualized sentencing discretion of the district court when it appropriately relies on the § 3553(a) factors in granting a downward or upward variance. *See United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc). In this case, however, the district court relied in part on an inappropriate sentencing consideration—the gap in time between the underlying crimes and his sentencing hearing. On remand, we leave it to the district court to exercise its ample discretion after *Booker* and *Gall* to impose a sentence sufficient but not greater than necessary to serve the § 3553(a) factors.

### III.

For these reasons, we reverse and remand the case for resentencing.