**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0831n.06**

**No. 09-1207**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 29, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GUAN HAN CHEN, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**. Guan Han Chen appeals a sentence of seven months incarceration and thirty months supervised release, the first seven months of which are to be served in a Community Corrections Center ("CCC"). The district court imposed the sentence after a jury convicted Chen of one count of harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). Chen claims that the district court erred in imposing the sentence by (1) declining to grant a three-level downward departure from the base offense level for harboring aliens for purposes other than for profit in accordance with U.S.S.G. § 2L1.1(b)(1); and (2) imposing a sentence based on a finding of fact by the judge that Chen had harbored aliens for profit when that fact had not been put to or decided by the jury in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). For the following reasons, we AFFIRM.

I.

In July 2006, the Immigration and Customs Enforcement ("ICE") Office of Investigations and the Federal Bureau of Investigation ("FBI") began investigating a possible marriage fraud organization operating in metropolitan Detroit. The ICE and the FBI suspected Chen of arranging fraudulent marriages between United States citizens and Chinese foreign nationals. In August 2006, during investigations at 5806 Sunrise Drive ("5806 Sunrise"), Ypsilanti, Michigan—the residence of Chen and his ex-wife and co-defendant, Hoa Le Chen ("Hoa Chen")—agents discovered Juan Mendez-Diaz, a Mexican national illegally in the United States who worked at Hoa Chen's Golden Chef Restaurant. The agents determined that Mendez-Diaz had been living in the Chens' basement.

As the FBI and ICE's investigation into the marriage fraud ring progressed, agents received information that the Chens continued to employ illegal aliens and that the aliens were residing at their home at 5806 Sunrise. The agents set up surveillance at the house on January 23, 2007, and detained two Hispanic males, later identified as Antonio Cupido-Alcudia and Rubicel Alonzo-Cruz, as they left the residence to go to work at Chen's New Garden Buffet restaurant. After the agents ascertained that the two men were in the United States illegally, they escorted Cupido-Alcudia into 5806 Sunrise so that he could collect his jacket from his room in the basement. Inside the house, Chen and Hoa Chen assured the agents that no one else was in the house. In the basement, the agents noticed several closed doors, behind which Hoa Chen assured them was "just luggage." However, upon opening one of the locked doors, a third man, Jose Zetina-Hernandez, was found attempting to hide behind the furnace. He was also found to be illegally in the United States and Chen's employee.

Chen and Hoa Chen were indicted on one count of harboring two illegal aliens, Zetina-Hernandez and Cupido-Alcudia, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). A fourth illegal alien found working at New Garden Buffet had told Chen that he had a Michigan identification card, so neither he nor Alonzo-Cruz, who was a minor, were mentioned in the indictment.

At trial, deposition testimony from Zetina-Hernandez and Cupido-Alcudia, the Chens' testimony, and testimony by the investigative agents detailed a scheme in which Mexican nationals illegally present in the United States worked in the Chens' restaurants for cash, slept at their residence at 5806 Sunrise without paying rent, and were transported to and from the restaurants by the Chen family. Chen admitted that the men living in his basement had worked at the restaurants and ate most of their meals at the restaurants, that he or other family members had provided transportation between 5806 Sunrise and the restaurants, and that none of the men had been given keys to the home. Depositions taken from Zetina-Hernandez and Cupido-Alcudia before they were deported were read into evidence at the trial. The two men testified that they worked at the restaurants eleven to thirteen hours per day, six days per week, were paid in cash at the end of the month without any deductions for rent, and had lived in the basement apartment at 5806 Sunrise for approximately three months. In a signed statement to the FBI, Hoa Chen admitted that illegal aliens worked at the restaurants and lived at 5806 Sunrise.

After closing arguments, the district court gave the jury instructions listing the elements of the charged crime and noting that the jury must find all elements proven beyond a reasonable doubt to convict. Neither the written nor oral jury instructions asked the jurors to determine whether Chen had harbored aliens for personal gain or commercial advantage or for a purpose other than profit.

Nor did the instructions refer to any provision of 8 U.S.C. § 1324(a)(1)(B), which establishes the statutory maximum punishments for violations of § 1324(a)(1)(A). A jury found Chen guilty of the indicted count.

The probation officer's Presentence Report ("PSR") erroneously described the offense of conviction as 8 U.S.C. § 1324(a)(1)(C)[1] and cited the applicable penalty provision as 8 U.S.C. § 1324(B)(i)—a nonexistent portion of the statute. The probation officer likely intended to refer to 8 U.S.C. § 1324(a)(1)(B)(i), which provides for the ten-year maximum prison term if the harboring is for financial gain. The proper statutory penalty provision was § 1324(a)(1)(B)(ii), with a maximum five-year prison term. The PSR identified a base offense level under the 2008 *United States Sentencing Guidelines Manual* ("the Guidelines") of 12 and a criminal history level of I, and found no reason to depart upward or downward. *See* U.S.S.G. § 2L1.1(a)(3). The resulting Guidelines range was 10 to 16 months. *See* U.S.S.G. ch. 5, pt. A. Neither the PSR nor the government's Sentencing Memorandum explicitly addressed the "purpose of commercial advantage or private financial gain" element of § 1324(a)(1)(B)(i) in discussing the appropriateness of either a variance or a three-level downward departure for harboring for a purpose other than for profit.

Before sentencing, Chen requested the three-level downward departure available under U.S.S.G. § 2L1.1(b)(1). Section 2L1.1(b)(1) states: "If (A) the offense was committed other than

---

[1]The probation officer's error likely arose from the same error in the original indictment. The indictment was amended before trial to specify that the charged offense was 8 U.S.C. § 1324(a)(1)(A)(iii). Violation of 8 U.S.C. § 1324(a)(1)(A)(iii) carries a maximum prison term of not more than five years, unless the offense was committed for the purpose of commercial advantage or private financial gain, in which case the maximum prison term is ten years. As noted, the indictment did not charge Chen with harboring for financial gain.

for profit, or the offense involved the smuggling, transporting, or harboring only of the defendant's spouse or child . . . , and (B) the base offense level is determined under subsection (a)(3), decrease by 3 levels." Chen's base offense level was calculated under § 2L1.1(a)(3), rendering him eligible for the downward departure under § 2L1.1(b)(1)(B). At the sentencing hearing, Chen's attorney asserted that Chen was not in the business of harboring aliens and that he paid his employees a living wage. He did admit, however, that "[i]t certainly was related to the business, there's no question about that. I don't think, though, that the harboring was done for a profit or motivation, it was done to run the business." Sentencing Tr. at 28–29. The district court found that the record demonstrated that the harboring was done to facilitate low-cost employment and that no evidence was presented that the employees had paid rent. The district court thus concluded that "it's fair for the Court to infer . . . that part of the compensation package was the provision of room and board and that to me is sufficient to qualify for it being related to a profitable enterprise." *Id.* at 30. The district court therefore declined to apply the three-level downward departure.

After hearing allocution from Chen and "considering the sentencing guidelines and the factors contained in the sentencing statute Section 3553(a)," the district court sentenced Chen to seven months incarceration and thirty months supervised release with the first seven months to be served at a CCC. *Id.* 40–46. Chen timely appealed his sentence.

II.

"[T]he district court's task is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of § 3553(a)(2)." *United States v. Klups*, 514 F.3d 532, 536 (6th Cir. 2008) (quoting 18 U.S.C. § 3553(a) and citing *United States v. Booker*, 543 U.S. 220 (2005)). We

review a district court's sentencing determination "'under a deferential abuse-of-discretion standard[]' for reasonableness," *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 40 (2007)), and its "factual findings for clear error and its legal conclusions *de novo*," *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) (citing *Lalonde*, 509 F.3d at 763). When reviewing a sentence for reasonableness, we consider both procedural and substantive reasonableness. *See Bolds*, 511 F.3d at 578 (citing *Gall*, 552 U.S. at 51).

A.

In order to be procedurally reasonable in determining an appropriate sentence, "[d]istrict courts, as a matter of process, must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence . . . ." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) (citing *Gall*, 552 U.S. at 51). Therefore, a district court abuses its discretion when it "commit[s a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. We have found that context determines how comprehensive the district court's explanation must be in order to demonstrate that a sentence is procedurally reasonable. *Klups*, 514 F.3d at 537. And, as in this case, "when a sentencing judge concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given defendant, the explanation for the sentence generally need not be lengthy." *Id.* (citing *Rita v. United States*, 551 U.S. 338, 357 (2007)).

When reviewing a sentence for procedural reasonableness, we adhere to the three-part inquiry laid out in *Bolds*. We must determine whether the district court:

> (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*Bolds*, 511 F.3d at 581. As the following analysis demonstrates, the district court's determination of Chen's sentence satisfied the procedural requirements laid out in *Bolds*.

1.

The district judge correctly calculated Chen's Guidelines range, despite any confusion that may have resulted from an incorrect statutory citation in the PSR. Although the citation to subparagraph (B)(i) in the PSR was an error, it was a harmless one. According to the Guidelines, the base offense level for all convictions under § 1324 is 12, regardless of which punishment provision under subparagraph (B) applied. *See* U.S.S.G. § 2L1.1(a)(3); *United States v. Compton*, 295 F. App'x 674, 675 (5th Cir. 2008) ("In the Sentencing Guidelines setting of a base offense level for this crime [under § 1324(a)(1)(A)], profit motive has no relevance. Regardless of financial gain, Compton's base offense level was 12."). Thus, the district court did not incorrectly calculate Chen's Guidelines range of 10 to 16 months based on a base offense level of 12 and a prior history level of I. *See* U.S.S.G., ch. 5, pt. A.

Furthermore, the district court did not abuse its discretion by denying Chen's request for a three-level downward departure based on the grounds that he had harbored aliens for purposes "other than for profit" as permitted under U.S.S.G. § 2L1.1(b)(1)(A). "Since *Booker*, we have reaffirmed

the doctrine that district judges in determining defendants' sentences may consider facts that they find under a preponderance-of-the-evidence standard." *Klups*, 514 F.3d at 537. Consequently, "[i]n many cases, the sentencing judge, not the jury, will determine the existence of . . . facts" that increase the sentence. *Rita*, 551 U.S. at 352.

Because Chen requested a downward departure, Chen bore the burden to demonstrate that he had harbored aliens other than for profit in order to be entitled to the downward departure. *United States v. Rodriguez*, 896 F.2d 1031, 1032 (6th Cir. 1990) ("[W]hen a defendant seeks to establish facts which would lead to a sentence reduction under the Guidelines, he shoulders the burden of proving those facts by a preponderance of the evidence."). The district court determined that Chen failed to meet this burden and, moreover, affirmatively found that he did harbor aliens for personal financial gain.

By doing so, the district court did not clearly err in concluding that Chen's conduct was motivated by profit. *See United States v. Young*, 553 F.3d 1035, 1051 (6th Cir. 2009) (explaining that an appellate court must review a district court's determination that a factual finding is supported by a preponderance of the evidence using the clear-error standard). The district court made "particularized findings related to evidence presented at trial" and provided both defense counsel and the government with an opportunity to argue for and against the three-level downward departure. *Id.* The district court explicitly rejected Chen's arguments that he was not in the business of harboring aliens, that he intended to deduct rent from at least one of the illegal alien's monthly paychecks, and that he paid the illegal aliens a living wage. The evidence presented at trial and defense counsel's admission at sentencing that Chen's harboring "certainly was related to the

business, there's no question about that" provided sufficient evidence for the district court to find by a preponderance of the evidence that Chen harbored the illegal aliens for private financial gain. *See United States v. Zheng*, 306 F.3d 1080, 1083, 1087 (11th Cir. 2002) (finding sufficient evidence from which a rational jury could find a "for profit" motive beyond a reasonable doubt when a restauranteur housed illegal aliens without rent so that they could work in his restaurant and paid an average monthly salary of $900 to $1,900 per month). The district court did what was required of it post-*Booker*, particularly given that Chen bore the burden of proving entitlement to the mitigating factor by a preponderance of the evidence.

2.

Chen did not seek a non-Guidelines sentence, and so we need only review the district court's analysis of the § 3553(a) factors to determine whether the district court satisfied the second prong of the *Bolds* procedural reasonableness analysis. *See Bolds*, 511 F.3d at 581.

While we review a district court's determination that the § 3553(a) factors justify a particular sentence with considerable deference, "our inquiry into the procedures used by the district court . . . is more searching." *Id.* at 579 n.4 (citing *Gall*, 552 U.S. at 51). "In applying Congress's mandate that sentencing courts must 'consider' the § 3553(a) factors, we have not lost sight of the fact that the district court judges are involved in an exercise of judgment, not a ritual." *Grossman*, 513 F.3d at 595. Thus, this court requires an "'articulation of the reasons the district court reached the sentence imposed,'" *Bolds*, 511 F.3d at 580 (quoting *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005)), with "only . . . enough detail to allow an appellate court to conduct 'meaningful

appellate review' and to conclude that the district court adequately considered the relevant statutory factors," *Grossman*, 513 F.3d at 595.

Although the district court did not explicitly analyze each of the § 3553(a) factors in turn, it did address those factors in rejecting the parties' requests for upward and downward departures for obstruction of justice and purpose other than for profit. For example, the district court's discussion of possible departures and split sentencing acknowledged "the kinds of sentences available" and the Sentencing Guidelines' treatment of the offense committed. *See* § 3553(a)(2)–(4). Furthermore, the government's argument for an obstruction of justice enhancement included consideration of the seriousness of the crime, the deterrence effect, and the import of respect for the law. *See* § 3553(a)(2). The judge acknowledged that "Chen was not fully forthcoming with the agents at any point[,] which I will reflect in my sentence within the guidelines range recommended by the probation office of 10 to 16 months." Sentencing Tr. at 35; *see* § 3553(a)(1)–(2). The district court also considered the "nature and circumstances of the offense and the history and characteristics of the defendant" when he heard Chen's allocution, discussed the for-profit aspects of the convicted crime, and waived any fine because of Chen's lack of resources. *See* § 3553(a)(1).

We find, therefore, that the district court's discussion of the factors, though not itemized, was sufficient to permit "meaningful appellate review" of its consideration of § 3553(a) factors in sentencing Chen.

3.

The third *Bolds* requirement is also satisfied because the district court adequately explained its reasoning for imposing the seven-month split sentence. The district court considered the parties'

-10-

arguments regarding a possible enhancement for obstruction of justice and downward departure for a non-profit purpose, heard the allocution and testimony of Chen regarding mitigating factors, and imposed a split sentence at the low end of the applicable Guidelines range. *See Bolds*, 511 F.3d at 580 ("[R]eversible procedural error occurs if the sentencing judge fails to 'set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority.'" (quoting *Rita*, 551 U.S. at 356) (alteration in original)); *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007) ("[W]hen 'a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.'" (quoting *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006))).

The district court, therefore, did not abuse its discretion by imposing Chen's sentence, and the sentence was clearly within the Guidelines and procedurally reasonable under *Booker*.

B.

Having found that the district court's sentencing determination was procedurally reasonable, we must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. Because Chen's sentence is within the Guidelines range, we may—and do— presume that it is reasonable. *Id.* at 51. The portion of the sentence to be served in prison—seven months—is well below the minimum sentence required by the relevant Guidelines range of 10 to 16 months. Even with the addition of seven months' supervised release at a CCC, the total time that Chen is to spend in custody—fourteen months—remains within the ten-to-sixteen-month Guidelines range.

The sentence that the district court imposed was therefore both substantively and procedurally reasonable in accordance with *Booker*.

III.

Chen argues that the district court erred because it imposed a greater sentence based on a factual finding that was never charged to the jury—namely, that Chen harbored illegal aliens for commercial advantage or private financial gain. Chen argues that this is a violation of *Apprendi* and *Blakely v. Washington*, 542 U.S. 296 (2004).

Chen's reliance on *Apprendi* and *Blakely* is inapposite, however, because the total sentence imposed by the district court—fourteen months in federal custody or three years and one month of incarceration and supervised release combined—falls below the statutory maximum sentences of both § 1324(a)(1)(B)(i) and (B)(ii), the lesser of which is five years. Because the sentence did not exceed the maximum sentence prescribed by Congress, the district court did not violate *Apprendi* or *Blakely*. *See Apprendi*, 530 U.S. at 481 ("We have often noted that judges in this country have long exercised discretion . . . in imposing sentence[s] *within statutory limits* in the individual case."); *see also Compton*, 295 F. App'x at 675 (finding that a defendant who pled guilty to § 1324(a)(1)(A) without pleading to a "for profit" motive did not have a valid *Apprendi* claim when he was given a sentence below the § 1324(a)(1)(B)(ii), five-year maximum sentence, even though a conviction under § 1324(a)(1)(B)(i) was improperly entered against him).

IV.

For the foregoing reasons, we AFFIRM the district court's sentence.