NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0014n.06

Nos. 11-1126, 11-1144

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 07, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| ALISTAIR RUFUS MCGEE, (11-1126) | ) | STATES DISTRICT COURT FOR |
| DENNIS CHARLES PORTER, (11-1144) | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendants-Appellants. | ) | |

Before: BATCHELDER, Chief Judge; GIBBONS, Circuit Judge; and ROSENTHAL, District Judge[*].

**JULIA SMITH GIBBONS, Circuit Judge.** This case arises out of a police sting operation which resulted in defendants-appellants' convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Defendant-appellant Alistair Rufus McGee went to trial and was convicted by a jury. He was sentenced to 204 months of imprisonment. Defendant-appellant Dennis Charles Porter pled guilty and was sentenced to 210 months of imprisonment. Both appeal their convictions and sentences. For the reasons set forth below, we affirm.

---

[*]The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

**I.**

The investigation in this case began in January 2010, when a confidential informant, "Nop," told ATF Agent Joseph Nether about an armed home-invasion crew. Nop introduced Nether, working undercover and posing as a drug courier for a large narcotics organization, to Porter, a member of the group with whom Nop had previously committed these armed robberies. On January 19, 2010, Nether told Porter that he wanted the Mexican cartel for which he worked to be "hit" because it paid him too little for his courier services and refused to compensate him properly for the dangerousness of his job. Nether mentioned that a typical shipment would include more than thirty kilograms of cocaine and that there were always at least two armed people guarding the drug house. When Nether asked if Porter would be interested in the job, Porter responded, "That's what we do. That's what we do. We do it all the time." Nether explained to Porter that the cartel used a different house for each delivery and that once he learned the location of the stash house, the crew would have to rob it within a couple of hours, before the cocaine was sent out with couriers.

On January 28, 2010, Nop telephoned Porter and arranged for Nop, Porter, and Nether to meet at a local restaurant to discuss the robbery plans. Nether told Porter that he anticipated the arrival of thirty to forty kilograms of cocaine around February 1. On February 1, Nop called Porter to let him know that the robbery would occur the next day and to arrange a meeting of the crew at the restaurant on the day of the robbery. Porter told Nop that he would bring McGee and another individual, later revealed to be Howard Barkley, as part of the crew.

When Nether arrived at the restaurant, Porter, McGee, and Nop were already there. They reviewed the plans for the robbery. McGee told Nether, "I'm following lead baby, I'm wit ya'll,

whatever ya'll, I'm rollin." Later, the last member of the team, Barkley, arrived at the meeting.

McGee had recruited Barkley to participate in the robbery as the driver. Porter then dismissed the

crew with instructions to retrieve the guns that they would carry for the robbery and reconvene at a

local liquor store. Barkley went with McGee to McGee's house, where McGee retrieved an assault

rifle. The crew members reassembled at the liquor store and continued on to the storage facility

where Nether indicated the robbery would take place. Nop, Nether, Porter, and Barkley all entered

through the gate, but McGee did not follow. He claimed that the gate had closed too quickly, so

Nether gave him the gate code over the telephone. At that point, officers announced themselves and

arrested Porter, Nop, and Barkley. McGee escaped, but was later arrested.

After the arrests, officers received information that there were firearms at Porter's mother's

residence. Upon a search of her home, officers discovered a Ruger Mini-14 .223 caliber rifle, a 12-

gauge Mossberg shotgun, a 20-gauge Springfield shotgun, and a .40 caliber HMK handgun. Two

of the firearms had recently been stolen from McGee's neighbor in a home invasion that McGee had

arranged for Porter and other crew members to commit.

McGee pled not guilty and went to trial on October 5-6, 2010. On the morning of trial,

McGee's counsel moved to exclude testimony relating to the uncharged home invasion robbery

under Federal Rule of Evidence 404(b), asserting that it would be more prejudicial than probative

if admitted. The district court denied McGee's motion, agreeing with the government that the

uncharged robbery was within the charged conspiracy because a gun found in Barkley's home

following his arrest was stolen in the course of that robbery, and because the two robberies involved

the same group acting together on two consecutive days. McGee's counsel did not move for

acquittal at the close of the government's case or at the end of all of the evidence. At the conclusion of the trial, the jury convicted McGee of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). McGee was sentenced to 204 months of imprisonment and five years of supervised release.

During an interview, ATF Agent Jerrod A. Marsh told Porter that agents had found guns and drugs at Porter's mother's house and that Porter's mother could be arrested if Porter did not confess. Subsequent to that statement, Porter waived his *Miranda* rights and confessed. Porter moved to suppress his statement on the basis that it was involuntary, but the district court denied the motion. Porter later pled guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The district court sentenced Porter to 210 months of imprisonment and five years of supervised release, applying the sentencing enhancements in U.S.S.G. § 2D1.1(b)(1) and U.S.S.G. § 2D1.1(c)(3).

## II.

McGee and Porter each challenge their convictions and sentences on appeal. We address their arguments in turn, beginning with those presented by McGee.

## A.

McGee appeals his conviction and sentence on the basis that (1) the district court improperly admitted testimony that referenced McGee's commission of an earlier, uncharged robbery; (2) the government presented insufficient evidence to sustain his conviction; (3) McGee's trial counsel was ineffective for failing to timely object to the prior robbery evidence and for failing to move for acquittal; and (4) the district's court's sentence was substantively unreasonable.

**1.**

McGee argues that the district court erred in allowing the government to present evidence regarding a prior, uncharged robbery of firearms arranged by McGee and committed by Porter and other members of their crew. He claims that the district court erroneously failed to analyze the uncharged robbery evidence pursuant to Rule 404(b) before admitting it. Rule 404(b) requires a district court to evaluate whether there was sufficient evidence that the prior conduct occurred, whether the evidence of that act was probative of a material issue other than character, and whether the probative value of the evidence was substantially outweighed by its potential for prejudice. *See United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

The district court's decision to admit evidence is reviewed for abuse of discretion. *United States v. Davis*, 514 F.3d 596, 611 (6th Cir. 2008). Rule 404(b) precludes the admission of extrinsic evidence of prior bad acts to prove the defendant's criminal propensity. However, Rule 404(b) is not implicated when evidence of prior acts is "part of a continuing pattern of illegal activity" or is "inextricably intertwined" with the indicted crime. *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Here, the admitted evidence was part and parcel of the charged conspiracy because it showed that the government informant, Nop, knew Porter through their participation in prior armed robberies together. It is clear that the way the defendants planned to commit the sting robbery was based on using the firearms they had stolen in the prior, uncharged robbery. The evidence showed that the prior, uncharged robbery provided the firearms that were involved in the conspiracy to commit the planned robbery. Therefore, the evidence is intrinsic, not extrinsic, to the charged conspiracy, and Rule 404(b) analysis was not required.

McGee notes that the district court initially excluded the evidence and changed its ruling after further argument from both parties. However, McGee has not demonstrated that any improper consideration caused the district court to change its view, and its evidentiary ruling was not an abuse of discretion.

**2.**

McGee next argues that the government produced insufficient evidence to support his conviction for conspiracy to possess cocaine with intent to distribute. Specifically, McGee claims that the government failed to present evidence that McGee talked with Nether, that anyone ever saw McGee with a gun on the date of the planned robbery, or that McGee ever entered the storage facility where the arrests were made.

In reviewing a claim of insufficient evidence, we usually ask whether "'any rational trier of fact could find the elements of the crime beyond a reasonable doubt' . . . 'view[ing] the evidence in the light most favorable to the prosecution.'" *United States v. White*, 492 F.3d 380, 393 (6th Cir. 2007) (quoting *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 589 (6th Cir. 1999)). But because McGee's counsel did not make a motion for acquittal, we review the trial record to determine if a "manifest miscarriage of justice" occurred. *United States v. Mack*, 159 F.3d 208, 216 (6th Cir. 1998) (quoting *United States v. Williams*, 940 F.2d 176, 180 (6th Cir. 1991)). A "manifest miscarriage of justice" occurs "'only if the record is devoid of evidence pointing to guilt.'" *United States v. Walden*, 625 F.3d 961, 967-68 (6th Cir. 2010) (quoting *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998)).

To sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must prove: (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009). In McGee's trial, the government presented evidence that in his conversation with Nether McGee agreed to violate drug laws. Further, McGee demonstrated his knowledge and intent to join the conspiracy when he told Nether, "I'm following lead baby, I'm wit ya'll, whatever ya'll, I'm rollin." McGee also recruited Barkley to join the robbery, and Barkley saw McGee with an assault rifle on the day of the planned robbery. Although McGee argues that his driving away from the robbery constituted a withdrawal and repudiation of the conspiracy, this action is a "'mere cessation'" of his criminal activity, and is not sufficient to demonstrate an affirmative withdrawal. *See United States v. Cox*, 565 F.3d 1013, 1016 (6th Cir. 2009) (quoting *United States v. Lash*, 937 F.2d 1077, 1083 (6th Cir. 1991)). Therefore, the government produced evidence of McGee's agreement, knowledge, intent, and participation. McGee has failed to demonstrate that his trial represented a "manifest miscarriage of justice" and we find that sufficient evidence supports McGee's conviction.

**3.**

McGee argues that he was prejudiced by his counsel's failure to timely object to evidence of the prior robbery and to move for acquittal at the end of the government's case and at the end of all of the evidence. He cites the delay in objecting to the prior robbery evidence as motivating the district court's change of ruling from excluding it to allowing it. He claims that the district court would likely have granted counsel's motion for acquittal had it been made.

We do not ordinarily entertain ineffective assistance of counsel claims on direct review. *See United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010) (citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Lewis*, 605 F.3d 395, 400 (6th Cir. 2010)). Given that there is no factual development in the record regarding counsel's reasoning or trial strategy, we adhere to this principle and reserve consideration of this issue for review on a full record, should McGee choose to pursue his claims on collateral review.

**4.**

McGee also challenges his sentence as substantively unreasonable because the district court gave "an unreasonable amount of weight to . . . McGee's . . . offense level." We review criminal sentences for abuse of discretion. *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008). If the sentence falls within the advisory Guidelines range, we apply a presumption of reasonableness. *Gall v. United States*, 552 U.S. 38, 46-47 (2007); *United States v. Anderson*, 695 F.3d 390, 402 (6th Cir. 2012). A sentence may be substantively unreasonable if the district court gives "an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005).

McGee received a sentence of 204 months of imprisonment. In addressing the § 3553(a) factors prior to imposing sentence, the district court noted the seriousness of armed robbery involving drugs, the need for general and specific deterrence, McGee's prior record, his work history, his age, and his health. McGee does not argue that the district court incorrectly calculated the advisory Guidelines range or that it failed to consider the § 3553(a) factors. He argues only that the district court gave undue weight to the seriousness of the offense. However, McGee has failed to overcome the presumption of reasonableness that attaches to his within-Guidelines sentence. There

is no evidence in the record that the district court considered the seriousness of the offense to the exclusion of other factors or that it gave undue weight to that aspect of the sentencing analysis—as noted above, the district court considered several factors and sentenced McGee below the midpoint of his Guidelines range. Rather, McGee's argument amounts to a complaint that he would have preferred for the district court to have "performed this balancing differently." *See United States v. Solinger*, 464 F. App'x 485, 491-92 (6th Cir. 2012). As we have noted previously, "[t]he fact that the district court did not give the defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of section 3553(a) in all relevant respects." *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007). Because the sentencing court followed the § 3553(a) factors and sentenced McGee to a presumptively reasonable sentence within his applicable Guidelines range, which is uncontested by either party, we hold that McGee's sentence was not substantively unreasonable.

**B.**

We now turn our attention to Porter's claims. Porter appeals his conviction and sentence on the basis that (1) the district court improperly denied his motion to suppress his confession as coerced; (2) the district court improperly applied an increased Sentencing Guidelines range for possessing a firearm; and (3) the district court improperly applied an increased Sentencing Guidelines range for a quantity of cocaine that was not confirmed as being involved in the offense.

**1.**

Porter claims that the district court erred in denying his motion to suppress his statement to police on the ground that it was involuntarily made. We cannot entertain this claim because Porter

pled guilty without reserving the right to appeal the district court's ruling on his suppression motion.

"[A] guilty pleading defendant may not appeal an adverse pre-plea ruling on a suppression of evidence motion unless he has preserved the right to do so by entering a conditional plea of guilty in compliance with Fed. R. Crim. P. 11(a)(2)." *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001). Porter relies heavily on *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993), for the principle that defendants who plead guilty may still challenge pre-plea denials of suppression motions. That case is inapposite here, as the defendant in *Finch* entered a conditional plea of guilty, expressly reserving the right to appeal the denial of his motion to suppress. *Finch*, 998 F.2d at 351. Because Porter entered a plea without conditions, he is foreclosed from raising this issue on appeal.

**2.**

Porter also challenges the district court's application, over his objection, of the sentencing enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). The district court's application of the Guidelines to the facts in Porter's case is subject to *de novo* review. *See United States v. Benson*, 591 F.3d 491, 504 (6th Cir. 2010). The sentencing enhancement is properly applied if the government has shown, by a preponderance of the evidence, that the defendant "actually or constructively 'possessed'" a weapon during the commission of the offense. *United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003) (quoting *United States v. Pruitt*, 156 F.3d 638, 649 (6th Cir. 1998)). Because Porter pled guilty to a two-week conspiracy, he is also responsible for the reasonably foreseeable possession of guns by his co-conspirators during that period. *See id.*

Officers found guns at Porter's mother's house. Porter told Nop that he and others had recently committed an armed home invasion and had stolen many guns. He also told Nop that he would be bringing a gun to the planned robbery and implied that he had many from which to choose:

> PORTER: . . . That's when I'm coming up out that bathroom blasting, I'm blasting, I'm smoking.
> CW: Oh shit, what you umm, you got
> PORTER: Huh?
> CW: You gonna have uhh revolver or uhh
> PORTER: Dawg, I got me a commando. It doesn't matter, I got so many now

These conversations contribute to the government's showing, by a preponderance of the evidence, that Porter actually or constructively possessed a weapon during the period of the charged conspiracy.

Porter also directed his crew to retrieve guns to use in the planned robbery. On the day of the robbery, Porter announced that the crew had not brought guns ("heaters") because each of them would retrieve them at their nearby homes and return quickly to commit the robbery. Barkley testified that McGee then went to his house and returned with an assault rifle. Because Porter directed the others to get their guns, McGee's subsequent possession of a gun was reasonably foreseeable to Porter.

Porter could have overcome the application of the enhancement if he had presented sufficient evidence that "it [wa]s clearly improbable that the weapon [supporting the application of the enhancement] was connected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1, cmt. n.3 (2010); *Johnson*, 344 F.3d at 567. He presented no such evidence. Because the government met its burden to prove the application of the enhancement by a preponderance of the evidence and

because Porter failed to produce any evidence that it was "clearly improbable" that any of the relevant weapons were connected to the conspiracy, we affirm the district court's application of the § 2D1.1(b)(1) enhancement.

**3.**

Porter's final challenge to his conviction and sentence is that the district court erred in applying the drug quantity enhancement of U.S.S.G. § 2D1.1(c)(3). Application of the enhancement requires a district court's finding of fact regarding the quantity of drugs involved in an offense, which is reviewed for clear error. *United States v. Jones*, 102 F.3d 804, 809 (6th Cir. 1996). In this case, the district court noted at Porter's sentencing hearing that the undercover agents suggested that the robbery would involve approximately thirty kilograms of cocaine and that "[Porter] bought into that quantity . . . [A]s far as the intent of [Porter], it was based on what the agent said, and the agent said that 30 was the number." The district court reasoned that "it's after the disclosure of 30 that [Porter] agreed to get involved in this transaction."

Porter argues that the undercover agents committed "sentencing entrapment" or "sentencing factor manipulation" when they indicated to him that thirty kilograms of cocaine would be involved in the robbery. We have declined to recognize the defenses of sentencing entrapment or sentence manipulation in other cases and do so again here. *See United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009); *United States v. Gardner*, 488 F.3d 700, 716-17 (6th Cir. 2007) (collecting cases). As Porter does not challenge his personal responsibility for the conduct leading to his conviction, and his asserted defenses are unavailable to him here, we affirm the district court's application of the § 2D1.1(c)(3) enhancement.

## III.

For the foregoing reasons, we affirm McGee and Porter's convictions and sentences.