RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0122p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARTHUR PAYTON,

*Defendant-Appellant.*

No. 13-1242

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cr-20043-1—Lawrence P. Zatkoff, District Judge.

Argued: April 30, 2014

Decided and Filed: June 12, 2014

Before: MERRITT, COOK, and DONALD, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jeffrey P. Nunnari, Toledo, Ohio, for Appellant. Douglas C. Salzenstein, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Jeffrey P. Nunnari, Toledo, Ohio, for Appellant. Douglas C. Salzenstein, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

---

## OPINION

---

MERRITT, Circuit Judge. This is a direct appeal from Arthur Payton's sentence to serve 45 years in prison for organizing a series of bank robberies in Michigan. Payton argues that his sentence is unreasonable. We agree, vacate his sentence, and remand.

1

## I.

Arthur Payton is a serial bank robber with a specific *modus operandi*. He would find an accomplice, usually a woman, and usually a woman addicted to drugs or engaged in prostitution. He would convince this accomplice to rob a bank on his behalf in exchange for a cut of the proceeds. He would provide this accomplice with a costume, a threatening note to give to the teller, bags, a toy gun, and everything else needed for the robbery. He would perform the necessary reconnaissance, and both drop off and pick up his accomplice.

Payton was caught in this scheme several times. The first time, when Payton was 26 years old, he was caught, tried, and convicted for six bank robberies—one personally while armed with a weapon, the other five he robbed with his preferred accomplice method. Payton was sentenced to ten years in prison and was released on January 24, 2002, only to be arrested later that year for robbing seven more banks using his accomplice method. Payton, then 35 years old, admitted his involvement in the robberies and was again sentenced to ten years in prison. He was released on July 29, 2011, only to be arrested again later that year for robbing four more banks. This third, final spree concerns us now. Payton, 45 years old at the time of his trial, maintained his innocence and was convicted on all counts.

Payton turned 46 years old before his sentencing hearing. Taking into account Payton's criminal record, the seriousness of his crime, and penchant for recidivism, the presentence report recommended a sentence within the Guidelines range of 210 to 262 months, or between 17 and a half to 22 years. Neither party objected to the presentence report, and the district court found the report accurate. The government urged the sentencing court to impose a more serious sentence of "at least" 300 months, or 25 years. Payton's counsel requested a sentence within the Guidelines range, arguing that even with a Guidelines sentence Payton would be released as an elderly man—somewhere between 63 to 68 years old—who would present little threat to the public.

After hearing each side, the judge sentenced Payton to 540 months, or 45 years in prison. The judge discussed a number of the sentencing factors listed in 18 U.S.C. § 3553(a), focusing on Payton's brazen recidivism and the threat he posed to the public. The court concluded that the 45 year sentence was "the minimum sentence" that was "reasonable and sufficient but not

greater than necessary to accomplish the goals of sentencing for this defendant." When prompted, Payton's counsel objected to the sentence above the Guidelines and the government said nothing. The district court responded "All right," and concluded the hearing without further discussion. Payton now appeals, arguing that his sentence is unreasonable.

## II.

"[W]e review sentences for reasonableness." *United States v. Camacho-Arellano*, 614 F.3d 244, 246 (6th Cir. 2010). A district judge has wide discretion in sentencing those convicted, and assessing the reasonableness of a judge's sentence on appeal is a multifaceted and often flummoxing task. However, the Supreme Court has made clear that "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall v. United States*, 552 U.S. 38, 46 (2007); *see also Rita v. United States*, 551 U.S. 338, 356 (2007). While a sentence outside the guidelines is not presumptively unreasonable, we must consider "the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 51. As the Supreme Court put it, "a major departure should be supported by a more significant justification than a minor one," *id.*, or as we have put it, "the greater the district court's variance, the more compelling the evidence must be." *United States v. Robinson*, 669 F.3d 767, 775 (6th Cir. 2012).

This makes good sense, since the sentencing judge has the burden of establishing the record with which we review the reasonableness of a given sentence. The Supreme Court has made clear that, even though the Guidelines are advisory and the district court retains significant discretion in sentencing, there remains a role for appellate review of sentences. *United States v. Booker*, 543 U.S. 220, 261 (2005). Our ability to review the reasonableness of a judge's sentence is dependent on the judge's obligation to explain his or her reasoning. 18 U.S.C. § 3553(c); *Rita*, 551 U.S. at 357-58. So we hold them to it, especially in cases where the judge deviates substantially from the advice of the Guidelines. *Rita*, 551 U.S. at 357.

The judge's view of the parties' arguments at sentencing is a crucial part of the judge's reasoning we must review on appeal. "Where the defendant or prosecutor presents nonfrivolous

reasons for imposing a different sentence . . . [t]he sentencing judge should articulate enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id*. at 356-57. As part of our obligation to ensure that the district court did not act arbitrarily in sentencing a defendant, we look to ensure that the sentencing judge considered all reasonable arguments in an impartial and sensible manner. "Sometimes the circumstances will call for a brief explanation[,] sometimes they will call for a lengthier explanation," but certainly some explanation. *Id.*; *see also, e.g., United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007) (vacating a defendant's sentence because the defendant "raised a number of arguments regarding application of the § 3553(a) factors, but those arguments went unmentioned and unaddressed, save the general statement by the district court that it had received, read, and understood the [arguments].").

## III.

Payton's 45 year sentence is a "major departure," "unusually harsh," and one that demands a "significant explanation." *Gall*, 552 U.S. at 51. A sentence that more than doubles the Guidelines recommendation, stacks twenty years on to the government's request, and keeps the defendant in prison until he is ninety one years old requires explanation about why such a sentence is "sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a).

We find the district court's explanation lacking in Payton's case. At minimum, the court failed to adequately respond to Payton's argument that his advanced age diminishes the public safety benefit of keeping Payton in prison an extra twenty years beyond the recommendation of the Guidelines. Even presuming Payton's desire to rob banks is insatiable, as the government argues, Payton contends that age will diminish his very ability to rob banks. This argument attacks the foundations of the government's support for the imposed sentence, and the court's reasoning that the threat posed by a sixty-eight-year-old Payton makes a longer sentence not simply prudent but necessary.

The Sentencing Commission has observed that "[r]ecidivism rates decline relatively consistently as age increases."[1] Recent analysis from the Bureau of Justice Statistics considering the recidivism rates of released prisoners in 30 states (including Michigan) from 2005 to 2010 supported the Commission's conclusion, finding decreased recidivism rates as prisoners age.[2] These statistics suggest that past fifty years old there is a significantly lower rate of recidivism.[3] Both the Guidelines and our Circuit's cases explicitly acknowledge that a defendant's age, and specifically old age, is a relevant consideration in sentencing. U.S.S.G. § 5H1.1; *United States v. Berry*, 565 F.3d 332, 341 (6th Cir. 2009); *United States v. Davis*, 537 F.3d 611, 616-17 (6th Cir. 2008). And observers of the criminal justice system have long acknowledged the "key" argument "that elderly offenders pose so low a risk to the public that long or otherwise harsh sentences have little to no utilitarian benefit."[4] Indeed, they observe that "because of health or other reasons, elderly offenders have the lowest rate of recidivism of all types of offenders; in fact, only about one percent of elderly offenders ever face a second conviction." *Id.* Studies indicate that neurotransmitters affecting aggression supplied at the synapses of brain neurons vary based on age, and may explain the observed decline in recidivism among older prisoners.[5] Such evidence, together with statistical support, suffices to require a sentencing judge to explain carefully why a criminal defendant like Payton remains likely to engage in violent robberies between the age of seventy and ninety. The district court did not address Payton's argument on this issue, and therefore did not provide an adequate explanation for imposing such a harsh sentence.

---

[1]United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 12 (2004) *available at* <http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf>.

[2]United States Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010 12, NCJ 244205 (April 2014) *available at* <http://www.bjs.gov/content/pub/pdf/rprts05p0510.pdf>.

[3]United States Sentencing Commission, *supra* note 1, at 28, exhibit 9.

[4]Dawn Miller, Sentencing Elderly Criminal Offenders, 7 Nat'l Acad. Elder L. Att'ys. J. 221, 232 (2011).

[5]See Raymond E. Collins, Onset and Desistance in Criminal Careers: Neurobiology and the Age-Crime Relationship, 39 J. Offender Rehabilitation 1, 1-8 (2004).

Certainly one can infer from the judge's disbelief that Payton could or would change his ways that the court considered and rejected Payton's age argument.  But an empty record allows one to draw the opposite inference as well—that the judge made his decision without adequately considering the personal and individualized circumstances that determine when a sentence is sufficient but not greater than necessary.  This is why we require the sentencing judge to explain his or her reasoning, on the record thoroughly addressing all relevant issues, to facilitate our review.

**IV.**

Payton's sentence is **VACATED**, and we **REMAND** for further proceedings consistent with this opinion.