NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0243n.06

No. 24-5747

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | May 12, 2025 |
| | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| KENDALL SHAW, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: STRANCH, BUSH, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Kendall Shaw pleaded guilty to a group of drug and firearm charges relating to his sale of methamphetamine. He now challenges the district court's imposition of a within Guidelines sentence of 350 months' imprisonment. For the following reasons, we **AFFIRM**.

## I. BACKGROUND

In early July 2023, a confidential informant reported that he had seen multiple pounds of methamphetamine and multiple firearms in Shaw's home in Louisville, Kentucky. The Louisville Metro Police Department responded to this tip by setting up three controlled buys from Shaw and his co-defendants. On July 6, 2023, a confidential informant went to Shaw's home and purchased 407.3 grams of methamphetamine from Shaw. While there, the informant observed several more pounds of methamphetamine and two firearms: a handgun, which was kept next to Shaw as he

weighed and packaged the methamphetamine, and a rifle, which leaned against a nearby wall. Shaw's minor daughter was present during the sale.

Later that day, an informant purchased 203.49 grams of methamphetamine from Sean Underwood, who authorities believed was one of Shaw's co-conspirators. The informant contacted Underwood and requested the methamphetamine. Underwood agreed but said he would need to pick up more from his supplier. Underwood then proceeded to Shaw's house and, immediately after leaving it, met with the informant and sold the informant the methamphetamine. Finally, on July 10, an informant purchased 201.29 grams of methamphetamine from Shaw in Shaw's home. While inside the home, the informant saw three firearms and observed another man purchase four ounces of methamphetamine from Shaw.

All told, the informants observed Shaw and his co-conspirator sell 925.48 grams of methamphetamine within a five-day period. Based on these observations, police obtained a search warrant for Shaw's house and car. They found three firearms and two scales, one of which had drug residue on it, in Shaw's home and another firearm in Shaw's car.

A grand jury indicted Shaw on August 16, 2023. He was charged with conspiracy to distribute fifty grams or more of methamphetamine, two counts of distributing fifty grams or more of methamphetamine, one count of aiding and abetting the distribution of fifty grams or more of methamphetamine, and two counts of possessing a firearm in furtherance of a drug trafficking crime. He remained a fugitive until his arrest on October 25, 2023.

While Shaw was in pretrial detention, he decided that someone called "Amy" was giving the police information about him. Shaw was recorded on several jail calls discussing "Amy" with two co-conspirators, Lisa Smith and Ashley Thompson. Shaw believed that if "Amy" could be persuaded not to testify against him, he could be out of prison in three and a half to four years.

Shaw took several steps to try to prevent "Amy" from testifying. First, one of his co-conspirators made a three-way call, in which Shaw told "Amy," "Do not come to court on me" and repeatedly instructed her not to testify. Later that same day, Shaw bragged to Smith and Thompson about having killed people and instructed Smith to make sure "Amy" did not testify. Smith responded that she would have someone "check her." And on March 5, 2024, "Amy" received a text from Shaw's daughter's phone instructing her not to come to court. A grand jury superseded the indictment and charged Shaw and his two co-conspirators with threatening a witness.

On May 8, 2024, Shaw pled guilty to all of the charges against him without a plea agreement. He was sentenced on July 26. Shaw faced a mandatory minimum of ten years for his drug charges and a five-year mandatory consecutive minimum sentence for each firearm charge. The minimum total sentence the court could impose was twenty years (240 months). After resolving all objections to the PSR's Guidelines calculations, the court concluded that Shaw's Guidelines range was 330 to 382 months. R. 210, Sentencing Tr., PageID 1009. Shaw's counsel asked for a below Guidelines sentence of 300 months imprisonment. R. 210, PageID 1014. The Government requested 382 months. R. 210, PageID 1015.

Prior to announcing Shaw's sentence, the court discussed its reasoning for the sentence it chose to impose. The district court began by explaining that it had reviewed and considered Shaw's family history, his criminal history, and his personal history. R. 210, PageID 1024-26. It then focused on the following key factors it found concerning. First, Shaw was a repeat offender and had several "very similar charges in terms of interfering with the justice system." R. 210, PageID 1024. Second, the charges likely did not reflect the full extent of Shaw's conduct given that he had been charged only with the methamphetamine that informants had seen him sell rather than the full quantity of methamphetamine in his home. R. 210, PageID 1024-25. Third, the

district court emphasized the need to impose serious sentences for dangerous crimes in order to promote respect for the law, provide just punishment, deter others from similar conduct, and protect the public from Shaw's activities, in particular his behavior regarding firearms. R. 210, PageID 1025. The court specifically highlighted the fact that at least some of the crimes had been committed in the presence of a child, increasing the possibility for harm. R. 210, PageID 999. Fourth, the court noted that the new charges involved conduct that occurred very shortly after Shaw had completed his sentence for prior offenses many of which were also dangerous. R. 210, PageID 1025-26.

The court selected a sentence that was "closer to the middle than it is to the top" of the Guidelines range and imposed a sentence of 350 months to be followed by five-years of supervised release. R. 210, PageID 1026. Although the court recognized that any sentence within the Guidelines would leave Shaw an older man when he was released from prison, it also expressed the hope that this sentence would, with the aid of good time credits and his time already served, allow Shaw to be released before the end of his life to "leave time for what comes next." R. 210, PageID 1026. Shaw timely appealed. His sole claim is that his sentence is substantively unreasonable.

## II.   ANALYSIS

We review a district court's sentencing decision under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). There are two components to our review of a district court's sentence: procedural reasonableness and substantive reasonableness. *See United States v. Bolds*, 511 F.3d 568 (6th Cir. 2007). Procedurally, the district court must "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that

are not clearly erroneous, and explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall,* 552 U.S. at 51). Substantively, the sentence, must be sufficient but no more than necessary to achieve the sentencing goals set out in § 3553(a). *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). Shaw does not contend that the sentence was procedurally unreasonable, so we confine our analysis to substantive reasonableness.

Because Shaw's sentence was within the Guidelines range, we apply a presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc). We respect "the district court's reasoned discretion to weigh the factors 'to fashion individualized, fact-driven sentences without interference from appellate courts.'" *Perez-Rodriguez*, 960 F.3d at 754 (quoting *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019)). We overturn only if we are "left with a definite and firm conviction that the district court committed a clear error of judgment." *Id*. at 753 (internal quotation marks omitted).

Section 3553(a) provides that a sentencing court should consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant[;]" (2) the "need for the sentence imposed" in light of the need to reflect the seriousness of the offense, protect the public, deter others, and promote rehabilitation; (3) "the kinds of sentences available[;]" (4) "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant;" (5) "any pertinent policy statement[;]" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[;]" and (7) "the need to provide restitution to any victims of the offense." A court is not required to act as an "automaton" and recite each factor; highlighting the individual characteristics that distinguish the defendant from others and that merit the sentence imposed is enough. *United States v. Smith*, 474 F.3d 888, 894 (6th Cir. 2007). But a

court acts unreasonably if it "place[s] too much weight on some of the § 3553(a) factors and too little on others" in reaching its sentencing decision. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (internal quotation marks omitted).

On appeal, Shaw makes two arguments. He first argues that the district court put too much weight on his criminal history because it was the only factor the court discussed at length. The record demonstrates otherwise. Certainly, the court considered Shaw's criminal history, and the court took care to explain why its consideration of Shaw's criminal history was distinct from the consideration already given by the Guidelines calculation. As discussed above, the court was concerned that Shaw previously was repeatedly committing similar crimes, repeatedly attempting to interfere with the justice system, and doing so almost immediately after he was released from custody. As the court noted, these factors informed the court's understanding of what was necessary to promote respect for the law, provide just punishment, deter others from similar conduct, and protect the public from Shaw's activities.

But the district court also explicitly gave substantial weight to other factors. It briefly discussed the relevant mandatory minimums, and extensively discussed the nature and circumstances of the offense. The court expressed concern that several of the offenses, most particularly the firearms offenses, were dangerous ones. The court noted that drug crimes have a significant adverse effect on those to whom Shaw sells drugs and their families, and that drug crimes had been committed in the presence of a minor child. It also noted that the charged conduct likely did not account for the full range of Shaw's dangerous actions. The court explained that each of these concerns factored into its selection of the sentence.

Finally, the court addressed the concern that Shaw raised both at trial and on appeal about his own personal characteristics. Shaw was 41 years old at the time of the relevant offense. Under

the statutory minimum sentence (accounting for time served) he would be 60 years old at the time of release. Under the Guidelines minimum, he would be closer to 70. Shaw characterized a Guidelines sentence as functionally a life sentence. The court responded:

> You're right that any of these sentences is going to leave you an older man, we hope a wiser one when you finish the sentence. . . . With the time you've already served, with the good-time credits that you'll be eligible to earn, that will, we all hope and trust, leave time for what comes next, and so I don't—I hope you don't treat it as, to use your word, effectively a life sentence.

R. 210, Sentencing Tr., PageID 1026. The district court did not abuse its discretion in finding that a sentence in the middle of the Guidelines range was appropriate in this case, in placing significant weight on Shaw's criminal history and the dangerous nature of his present crimes, or in assigning the limited weight it did to Shaw's age at his time of release.

Shaw next argues that the district court erred in failing to impose the statutory minimum sentence of 240 months, a sentence lower than he proposed at his sentencing hearing. Shaw contends that this would be a more appropriate sentence because the recidivism rate for men above 60 years old (the age Shaw would be when released if the court imposed a minimum sentence) is significantly less than the rates for men of his current age. *See United States v. Payton*, 754 F.3d 375, 379 (6th Cir. 2014) (explaining that "elderly offenders pose so low a risk to the public that long or otherwise harsh sentences have little to no utilitarian benefit." (internal quotation marks omitted)). As the Government notes, however, a 240-month sentence would have been a significant downward departure from the Guidelines. It would have amounted to imposing no sentence at all for Shaw's witness tampering conviction—a charge that did not factor into the minimum sentence, but which Shaw, himself acknowledged as "troubling" and which the court characterized as "serious" and "dangerous" conduct. Appellant's Br. 7–8; R. 210, PageID 1025.

Under these circumstances and on this record, we do not see an abuse of discretion in the court's decision to impose an above-minimum sentence.

### III.   CONCLUSION

For the forgoing reasons we **AFFIRM** the judgments of the district court.